AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>333 East Commonwealth Avenue, Apartment 137<br>Chandler, Arizona 85225 | Case No. 26-8131 MB<br><br>(Filed Under Seal) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A-1.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before 6-9-26 _(not to exceed 14 days)_
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days _(not to exceed 30)_ ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    5-26-26 5:01p    _Judge's signature_

City and state: <u>Phoenix, Arizona</u>    <u>Honorable John Z. Boyle, U.S. Magistrate Judge</u>
_Printed name and title_

## Attachment A-1
### *Property to be searched*

The property to be searched is 333 E. Commonwealth Ave, Apartment 137, Chandler, Arizona, 85225, which is described in the Affidavit as the "Subject Premises". It is an apartment within the "Encore Novo" apartment complex. The apartment complex is gated apartment complex, located south of Chandler Boulevard and east of Arizona State Route 87 (SR 87), also known as Arizona Avenue. There are three buildings within the complex, buildings A, B, and C. Apartment 137 is located on the first floor of building B, the southwestern most building. The building letter with units housed in the building for building B is affixed to the north side of the structure with a blue and yellow sign. All the buildings are a mixture of cinder blocks, with blue, white, tan, and grey stucco. Apartment 137 is a first-floor unit on the west side of building B, near the south side of the building. The front entry door for apartment 137 faces east towards the center of the building, opening to an interior hallway. The apartment number for the Subject Premises is affixed to the right side of the door in white numbers on the bottom of a yellow tag/ornamental placard as well as on a cutout running vertically from a dark blue tag/ornamental placard placed over the yellow tag/ornamental placard, placed at eye level. The front door is an inward-opening solid door painted grey with silver handle and lock; the handle and lock are on the right (north) side of the door.

Photographs of the **Subject Premises** follow:





## Attachment B
### *Items to be Seized from the Subject Locations*

1. Stolen financial instruments or U.S. mail, including but not limited to: envelopes, either unopened or opened, checks made payable from entities not associated to Chamar Larry and/or made payable to individuals or entities not associated to Chamar Larry, gift cards, prepaid credit cards, or debit cards included inside greeting cards addressed to individuals or entities not associated to Chamar Larry.

2. Records of sales of stolen financial instruments, including but not limited to: books; ledgers; receipts; notes; pay and owe sheets; and other papers relating to the acquisition, transportation, possession, and/or distribution of stolen financial instruments or the receipt and disposition of proceeds derived from the sale of stolen financial instruments.

3. Customer lists, stolen financial instruments inventory lists, criminal associates lists, and/or any notes containing the individual names, telephone numbers, or addresses of such persons, and any records of accounts receivable and/or money paid or received, to include digital currency supplied or received.

4. Financial records and/or other documents reflecting activity of trafficking of stolen financial instruments or the disposition of theft proceeds, including but not limited to: digital cryptocurrency transactions; financial instruments; account statements; stocks; bonds; bank checks; cashier's checks and receipts for such checks; Western Union receipts; money orders; money order receipts; credit card records; PayPal or other electronic money transfer services; pre-paid credit cards; green dot cards; vehicle registrations; real estate records; and/or any other documents or evidence of financial transactions involving the receipt and/or disposition of proceeds from the sale of stolen financial instruments.

5. Digital cryptocurrency including Bitcoin, Ethereum, Dash, or other digital coin "altcoin", and any other financial instruments believed related to the acquisition, transportation, possession, and/or distribution of stolen financial instruments or the receipt and disposition of proceeds derived from the sale of stolen financial instruments.

6. Safe deposit box keys, storage locker keys, safes, and related secure storage devices, and documents relating to the rental or ownership of such units.

7. Records identifying other co-conspirators, including, but not limited to: address books; telephone books; rolodexes; telephone bills and records; records of telephone calls recorded in writing; notes reflecting telephone and pager numbers or papers reflecting names, addresses, and telephone numbers of suspected co-conspirators; photographs, including still photos, negatives, movies, slides, video tapes, and undeveloped film; and audiotape recordings of conversations, including those made over telephone answering machines.

8. Records of travel, including but not limited to: tickets; transportation schedules; passports; automobile rental records; motel/hotel receipts; and any notes and other receipts related to

travel.

9. Indicia of occupancy, residency, rental, use, control, and/or ownership of the Subject Premises or Subject Vehicle, including but not limited to: keys; photographs; deeds; mortgages; lease agreements; rental receipts; canceled checks; bills; titles; and registration documents.

10. Backpacks, suitcases, file cabinets; other locked or unlocked containers; hidden compartments that may contain any of the items listed in paragraphs 1 through 8, above, and the contents thereof.

11. Computers, cellular telephones, tablets, and other media storage devices, such as thumb drives, CD-ROMs, DVDs, Blu Ray disks, memory cards, hardware wallets, and SIM cards (hereafter referred to collectively as "electronic storage media").

12. Any records and information found within the digital contents of any electronic storage media seized from the **Subject Locations**, including:

   a. all information related to the sale, receipt, shipping, transportation, transfer, or possession of stolen financial instruments;

   b. all information related to buyers or sources of stolen financial instruments (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records;

   d. all information regarding the receipt, transfer, possession, transportation, or use of proceeds derived from the sale of stolen financial instruments;

   e. any information recording schedules or travel;

   f. evidence of persons utilizing, owning, or controlling the electronic storage media at the time the items described herein were created, edited, or deleted—such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, phonebooks, virtual currency applications, and crypto-currency wallet applications;

   g. Evidence of communication on TOR darknet websites and the use of the digital cryptocurrency Bitcoin or other "Altcoin"

   h. evidence indicating how and when the electronic storage media were accessed or used to determine the chronological context of electronic storage media access, use, and events relating to crime under investigation and to the electronic storage media user;

   i. evidence indicating the electronic storage media user's state of mind as it relates to the crime under investigation;

j.  evidence of the attachment to an electronic storage medium of another storage device or similar container for electronic evidence;

k.  evidence of counter-forensic programs (and associated data) designed to eliminate data from the electronic storage media;

l.  passwords, encryption keys, and other access devices that may be necessary to access the electronic storage media;

m.  documentation and manuals that may be necessary to access the electronic storage media or to conduct a forensic examination of the electronic storage media;

n.  records of or information about Internet Protocol addresses used by the electronic storage media;

o.  records of or information about the electronic storage media's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

p.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as prints, slides, negatives, videotapes, motion pictures, or photocopies). This shall include records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the computer, electronic device, or other storage medium.

This warrant authorizes a review of records and information seized, copied, or disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the USPIS may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

During the execution of the search of the Subject Locations described in Attachments A-1, A-2, and A-3, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of any individual, who is found at the subject premises and reasonably believed by law enforcement to be a user of a device found at the premises, to the fingerprint scanner of the device; (2) hold a device found at the premises in front of the face those same individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|
| 26-8131MB | 5/27/2026 12:25pm | Left at residence |

Inventory Made in the Presence of:

Postal Inspectors Michael Cunha, Kevin O'Donnell, Andrea Brandon, David Stevens, Ricky Glass

Inventory of the property taken and name of any person(s) seized:

See attached inventory form

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 5/29/2026

Antoine Martel  Digitally signed by Antoine Martel
Date: 2026.05.29 11:33:59 -07'00'

*Executing officer's signature*

Antoine Martel, U.S. Postal Inspector

*Printed name and title*